IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KIMBERLEY SHADIX-MARASCO AND MARY LOREN PECHONIS CONRAD | § § § | |
| v. | § § | A-09-CA-891 LY |
| AUSTIN REGIONAL CLINIC P.A., D/B/A EOS DERMATOLOGY & MED SPA BY AUSTIN REGIONAL CLINIC, COVENANT MANAGEMENT SYSTEMS L.P. AND STEVEN RASMUSSEN, M.D. | § § § § § § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are: Corporate Defendants' Partial Motion to Dismiss and Supporting Brief (Clerk's Docket No. 8); Steven Rasmussen, M.D.'s Motion for Partial Dismissal (Clerk's Docket No. 14); Plaintiffs' Motion for Leave to File an Amended Complaint (Clerk's Docket No. 6); Plaintiffs' Motion for Leave to File Second Amended Complaint (Clerk's Docket No. 30); and the Parties' Briefs in response to the above-motions. The District Court referred all of these motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  GENERAL BACKGROUND**

On December 11, 2009, Plaintiffs Kimberly Shadix-Marasco and Loren Pechonis Conrad filed the above-sexual harassment and employment discrimination lawsuit under Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, against Austin Regional Clinic P.A., ("ARC") Austin Regional Clinic P.A. d/b/a/ eOs Dermatology and Med Spa by Austin Regional Clinic ("eOs"), Austin Regional Clinic P.A.'s alleged alter ego Covenant Management Systems L.P. ("CMS") and Dr. Steven Rasmussen.  Plaintiffs allege that during their employment with eOs,[1] a provider of dermatology and aesthetic services, they were repeatedly sexually harassed and experienced a hostile work environment.  Specifically, Plaintiffs allege that the Medical Director of eOs, Dr. Steven Rasmussen, "targeted women as victims by demeaning them, verbally abusing them, yelling at them, making unwelcome vulgar sexual comments, slapping their hands during procedures, staring at women's breasts and touching women (including patients) with his hands and even rubbing up against their legs with his genitalia during administration of Botox injections." Plaintiffs' Original Complaint at ¶ 13.  In addition to the "offensive touching perpetrated on female employees and patients," Plaintiffs further allege that Dr. Rasmussen bragged about his sexual liaisons in front of them and female patients.  Lastly, Plaintiffs contend that eOs management ignored their complaints regarding Dr. Rasmussen's offensive behavior and that they were ultimately constructively discharged.

Plaintiffs' Original Complaint alleges Title VII claims of sexual harassment and hostile work environment and retaliation claims under § 161.134 of the Texas Health and Safety Code, on behalf of both Plaintiffs Shadix-Marasco and Pechonis Conrad against ARC, eOs and CMS ("the Corporate Defendants").  In addition, Plaintiff Shadix-Marasco alleges a state law claim for assault and battery against Dr. Rasmussen individually based upon her allegation that Dr. Rasmussen deliberately

---

[1] Austin Regional Clinic, a multispecialty medical group in Central Texas, owns and operates eOs.

2

burned her face during a laser procedure in retaliation for having spurned his sexual advances. Finally, Plaintiff Shadix-Marasco alleges an intentional infliction of emotional distress claim against Dr. Rasmussen, also in his individual capacity.

On December 31, 2009, the Corporate Defendants filed a Partial Motion to Dismiss arguing that (1) Plaintiffs' claims against eOs should be dismissed because eOs is not a separate legal entity from ARC; (2) Plaintiff Shadix-Marasco's intentional infliction of emotional distress claim should be dismissed because it is a gap-filler tort and Plaintiff has other theories of redress; (3) Plaintiff Shadix-Marasco's retaliation claim under the Texas Health and Safety Code is barred by limitations; and (4) Plaintiffs' alter ego claim against CMS should be dismissed because Plaintiffs have failed to meet the heightened pleading requirements for fraud claims under Federal Rule of Civil Procedure 9(b).

On January 20, 2010, Individual Defendant Dr. Rasmussen filed his Motion for Partial Dismissal arguing that (1) Plaintiffs' Title VII and Texas Health and Safety Code claims against him in his individual capacity should be dismissed because only employers are liable for such claims; and (2) Plaintiff Shadix-Marasco's intentional infliction of emotional distress claim should be dismissed since she has other theories of redress.

In response to Defendants' arguments, Plaintiffs have agreed to voluntarily dismiss Defendant eOs from this lawsuit based on ARC's representations that eOs is not a separate legal entity. Plaintiffs have also agreed to dismiss Plaintiff Shadix-Marasco's claim under the Texas Health and Safety Code as Plaintiffs concede that her claim is time-barred. In addition, Plaintiffs clarify that they have not asserted a Title VII claim or Texas Health and Safety Code claim against Defendant Rasmussen individually.

In order to clarify their claims and to respond to Defendants' arguments, Plaintiffs have also filed a Motion for Leave to file an Amended Complaint.[2] Defendants oppose the amendment contending that the amendment would not cure the underlying defects of Plaintiffs' claims and, thus, any amendment would be futile.

## II.  STANDARD OF REVIEW

**A.     Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and rarely granted." *Kaiser Alum. & Chem. Slas v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). In reviewing the motion, the court is to take all of the well-pleaded facts in the complaint as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). For years, the long-standing rule had been that a court may not dismiss a case under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated the standard differently, stating instead that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 570 & 555. In its last term, the Supreme

---

[2]Plaintiffs have also filed a subsequent Motion for Leave to file a Second Amended Complaint (Clerk's Docket No. 30) in order to add another exhibit to the Complaint– Plaintiff Shadix-Marasco's Notice of Right to Sue letter from the EEOC. Other than the exhibit, the Second Amended Complaint is identical to the First Amended Complaint.

Court made it plain that this new standard applies to all case, not just to antitrust cases such as *Twombly*. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1953 (2009).

**B.     Rule 15(a)**

Federal Rule of Civil Procedure 15(a) provides that leave to amend must be "freely given when justice so requires." FED. R. CIV. P. 15(a). Because Rule 15(a) "evinces a bias in favor of granting leave to amend, " unless there is a substantial reason to deny leave to amend, "the discretion of the district court is not broad enough to permit denial." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000) (quotations and citations omitted). However, it is within the district court's discretion to deny a motion to amend if it is futile. *Id.* at 872-3. Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. To determine futility, courts must apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quotations and citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

### III.   ANALYSIS

**A.     Plaintiff Shadix-Marasco's IIED Claim**

In addition to her Title VII and assault and battery claims, Plaintiff Shadix-Marasco also asserts a state common law intentional infliction of emotional distress ("IIED") claim against Dr. Rasmussen individually.[3] Defendants contend that this claim is precluded under Texas law since it

---

[3]Although Plaintiffs' pleadings do not clearly state whether both Plaintiffs are pursuing IIED claims against Dr. Rasmussen, during the motions' hearing Counsel clarified that only Plaintiff Shadix-Marasco is pursuing an IIED claim in this case.

is a "gap filler" tort and it is based upon the same conduct which supports Plaintiff's statutory claims.

In *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), the Texas Supreme Court recognized that an IIED claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). In *Hoffmann-La Roche,* the Court further elaborated that:

> The tort's clear purpose . . . was to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied . . . . In creating the new tort, we never intended that it be used to evade legislatively-imposed limitations on statutory claims or to supplant existing common law remedies. Properly cabined, the tort simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results. Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available.

*Id.* (internal citations omitted). Thus, in *Hoffmann-La Roche* the Court held that the plaintiff could not pursue both an IIED claim and a sexual harassment claim under the Texas Commission on Human Rights Act ("TCHRA") against her former employer, as the "CHRA provides a remedy for the same emotional damages caused by essentially the same actions, there is no remedial gap in this case and thus no support for the award of damages under the intentional-infliction claim." *Id.* at 450.

The Texas Supreme Court expanded on its *Hoffmann-La Roche* decision in *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815-17 (Tex. 2005), in which it held that a plaintiff cannot bring an IIED claim against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against plaintiff's employer based on the same conduct. The plaintiff in *Creditwatch*

6

had initially alleged numerous acts of sexual harassment under the TCHRA, but withdrew those claims when the defendants moved for summary judgment based on limitations. *Id*. at 815-16. In her amended complaint, the plaintiff alleged only an IIED claim based on her supervisor's sexual advances and on retaliatory conduct. The Supreme Court held that the plaintiff could not pursue an IIED claim against her supervisor since the complaints forming the basis of plaintiff's IIED claims all stemmed from her supervisor's lewd advances and subsequent retaliation because of plaintiff's refusal of those advances. *Id*. at 816. The Court held that since Plaintiff's complaints were covered by other statutory remedies, specifically the TCHRA, she could not assert the same complaints as IIED claims. *Id.* The court noted that IIED was never intended as an easier and broader way to pursue claims already protected by civil and criminal laws. *Id*. at 818.

Thus, under *Creditwatch* and its progeny, a plaintiff cannot bring an IIED claim against an employer or a supervisor where the plaintiff could bring a state statutory claim or other tort claim against plaintiff's employer based on the same conduct. *Id.* at 815-817; see also, *Sublet v. Tyler Stafing Servs., Inc.,* et al., 2007 WL 1467261 * 1-2 (N.D. Tex. May 14, 2007) (court denied remand where facts forming basis of plaintiff's IIED claim against defendant supervisor seemed the same as facts forming basis for plaintiff's discrimination and retaliation claims against employer); *Pacheco v. Zanios Foods, Inc., et al.*, 502 F. Supp.2d 508, 511-12 (W.D. Tex. 2006) (court denied remand because there was no reasonable basis of recovering against defendant supervisor on IIED claim when other statutory remedies were available for the underlying conduct); *Perez v. Merrill Lynch & Co., Inc.*, 2006 WL 3247951 *2-3 (S.D. Tex. Nov. 6, 2006) (court denied remand on basis that defendant supervisor was improperly joined where IIED claim was based on conduct that formed the basis of Plaintiff's gender discrimination/retaliation claims); *Martinez v. Computer Sciences*.

*Corp.*, 2005 WL 3414828 * 3 (W.D. Tex. May 16, 2005) (stating that "a plaintiff may no longer bring an IIED claim against a supervisor for workplace harassment under Texas law").

Accordingly, the Court must examine the proposed Amended Complaint to determine whether Shadix-Marasco's allegations supporting her IIED against Dr. Rasmussen are independent of her statutory harassment claims. In support of her IIED claim, she alleges that "Rasmussen openly threatened to blackball Mrs. Shadix-Marasco in the Austin and surrounding medical community." Amended Complaint at ¶ 26. In addition, Plaintiff alleges that after she complained to the office manager about Dr. Rasmussen's offensive sexual touching and abusive behavior, Dr. Rasmussen confronted her in a small examination room. The complaint describes the encounter as follows:

> [Mrs. Shadix-Marasco] told him directly how offensive his behavior was and revealed personal details about her childhood that unwittingly made her more vulnerable to his predatory conduct. Rasmussen then increased the vigor of his predatory offensive behaviors, fully aware of the effect that his conduct was having on her because of her history. As a physician with specialized knowledge he capitalized on the opportunity to injure her emotionally and mentally.

Amended Complaint at ¶ 27. While Plaintiff's complaints about Dr. Rasmussen's lewd behavior and threats to blackball her would clearly be covered under other statutory remedies such as Title VII,[4] Plaintiff's allegations that Dr. Rasmussen continued to torment her after she had revealed personal information to him, knowing that it would cause her severe emotional distress states a *prima facie* claim for IIED under Texas law. See *Hoffmann-La Roche*, 144 S.W.3d at 445.

---

[4]An IIED claim does not extend to insults, indignities, threats, annoyances, or petty oppressions. *Hoffmann-LaRoche*, 144 S.W.3d at 448-451 (finding that allegations and evidence of vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, did not, as a matter of law, rise to the level of extreme or outrageous conduct); *Louis v. Mobil Chemical Co.*, 254 S.W.3d 602, 609 (Tex. App.– Beaumont 2008, pet. denied) (holding that supervisor's alleged threat to ruin employee's career was insufficient to establish IIED claim). Courts have also held "that a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999).

To state a *prima facie* claim for IIED under Texas law, a plaintiff must show: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Id.* In order to establish a cause of action for intentional infliction of emotional distress in the workplace, "an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *Id.* "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). In Texas, "[i]t is for the court to determine in the first instance whether conduct is extreme and outrageous, and such claims are submitted to a jury only when reasonable minds may differ." *Creditwatch,* 157 S.W.3d at 817. First, the conduct complained of in the quoted passage is not actionable conduct under the TCHRA or Title VII, but instead falls within a "gap" between the laws prohibiting sexual harassment and assault. Second, if true, the conduct complained of—a person upon whom trust, confidence and responsibility is imposed, abusing that trust to torment a person who lacks the power to stop it—is behavior that reasonable minds could find to be extreme and outrageous. Accordingly, Plaintiff has alleged sufficient facts to "to state a claim to relief that is plausible on its face," and thus Defendants' Motions to Dismiss with regard to the IIED claim should be denied.

**B.     Plaintiffs' Alter Ego Claim against CMS**

Plaintiffs' Amended Complaint asserts Title VII and THSC claims against both "ARC and/or Covenant Management Systems." See Amended Complaint. In explaining the inclusion of Covenant

9

Management Systems ("CMS"), Plaintiffs' contend that "Covenant Management Systems L.P. is the alter ego of ARC and shares ARC's principal place of business" and adds that "Covenant is sued in an abundance of caution in the event that ARC attempts to claim that Plaintiffs were not the employees of ARC."  Plaintiffs' Amended Complaint at ¶ 4.  Defendants argue that Plaintiffs' Amended Complaint fails to state a claim for relief against CMS because they have failed to assert any facts supporting their conclusory allegation that CMS is the alter ego of ARC.  Defendants further argue that Plaintiffs have failed to establish that CMS is the alter ego of ARC since they have failed to establish fraud under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The Court agrees.

Under the alter ego doctrine, a parent company may be held liable for the actions of its instrumentality in the name of equity when the corporate form is used as a "sham to perpetrate a fraud." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir.) (quoting *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1132 (5th Cir. 1988)), *cert. denied*, 549 U.S. 1051 (2006).  Because fraud is an element of the alter ego doctrine, a plaintiff pleading alter ego must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").  The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotations omitted).  Moreover, "[c]onclusory allegations of alter ego status will not survive a motion to

dismiss." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.2d 765, 789 (N.D. Tex. 2008) (quoting *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp.2d 594, 607 (N.D. Cal. 2007)).

Plaintiff's Counsel conceded at the motions' hearing that Plaintiffs' allegations do not meet the pleading requirements for Rule 12(b)(6) or Rule 9(b). Accordingly, Plaintiffs' claim against CMS based on the alter ego theory should be dismissed. However, as stated on the record during the hearing in this case, the Court will permit Plaintiffs to amend their Complaint to add a claim against CMS based on the "single employer" theory of liability under Title VII established in *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983).[5]

**C.   Conclusion**

Based upon the foregoing, Defendants' Motions to Dismiss should be granted in part and denied in part. As discussed above, eOs Dermatology and Med Spa by Austin Regional Clinic should be dismissed from this lawsuit *without prejudice*. In addition, Plaintiffs' alter ego claim against Defendant Covenant Management Systems L.P. should also be dismissed from this lawsuit. The Court further finds that Shadix-Marasco's retaliation claim under the Texas Health and Safety Code should be dismissed, but finds that she has pled sufficient facts to support her intentional infliction of emotional distress claim against Dr. Rasmussen.

---

[5]In *Trevino*, the Fifth Circuit explained that "[t]he term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed" and explained that "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Id*. at 403-4. The Court found that the following factors should be considered in determining whether two private entities should be aggregated for the purposes of determining whether they constitute an employer under Title VII: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. The second factor has been deemed the most important. *Id.* at 404.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge **RECOMMENDS** that the Defendants' Partial Motions to Dismiss (Clerk's Docket Nos. 8 & 14) are **GRANTED IN PART AND DENIED IN PART.**  Specifically, the Court **RECOMMENDS** that the District Court **DISMISS** eOs Dermatology and Med Spa by Austin Regional Clinic from this lawsuit without prejudice.  The Court **FURTHER RECOMMENDS** that the District Court **DISMISS** Plaintiff Kimberly Shadix-Marasco's retaliation claim under the Texas Health and Safety Code with prejudice. **IT IS FURTHER RECOMMENDED** that the District Court **DISMISS** Plaintiffs' alter ego claim against Defendant Covenant Management Systems L.P. with prejudice.   However, the Court RECOMMENDS that the District Court DENY the Motions to Dismiss with regard to the intentional infliction of emotional distress claim.

## V.  ORDER

In accordance with the above-findings, the Court **DENIES** Plaintiffs' Motions for Leave to Amend (Clerk's Docket Nos. 6 & 30).  However, the Court will permit Plaintiffs to amend their Complaint to add a single employer claim against Covenant Management Systems L.P. and to further clarify their pleadings regarding the intentional infliction of emotional distress claim. Accordingly, Plaintiff shall file an amended complaint consistent with the terms of this Order by June 12, 2010.

## VI.  WARNINGS

The parties may file objections to recommendations contained within this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider

frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of June, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE