# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| KIMBERLEY SHADIX-MARASCO AND § | | |
| MARY LOREN PECHONIS CONRAD § | | |
| § | | |
| v. § | A-09-CA-891 LY | |
| § | | |
| AUSTIN REGIONAL CLINIC P.A., § | | |
| COVENANT MANAGEMENT SYSTEMS, § | | |
| AND STEVEN RASMUSSEN, M.D. § | | |

## ORDER

Before the Court are: Defendant Rasmussen's Motion for Mental Examination (Clerk's Docket No. 64), Plaintiffs' Motion for Protective Order (Clerk's Docket No. 66), and the various responsive briefs. The District Court referred the above-motions to the undersigned Magistrate Court for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72 and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

On April 8, 2011, the Court conducted a hearing on the above-motions. After that hearing the Court received supplemental briefing. Based upon the relevant case law, rules and briefs and argument before the Court, the Court hereby makes the following rulings on the above-discovery motions.

## I.   General Background

Plaintiffs Kimberly Shadix-Marasco and Loren Pechonis Conrad assert claims of sexual harassment and a hostile work environment under Title VII, and retaliation claims under § 161.134 of the Texas Health and Safety Code against the Corporate Defendants. Shadix-Marasco also asserts state law claims of assault and battery and intentional infliction of emotional distress ("IIED")

against Dr. Steven Rasmussen, in his individual capacity. Specifically, Plaintiffs' IIED claim alleges the following:

> Rasmussen openly threatened to blackball Mrs. Shadix-Marasco in the Austin and surrounding medical community. Mrs. Pechonis-Conrad reported the threat to Rita Gould (COO) who did nothing about the complaint.
>
> After Mrs. Shadix-Marasco complained to Joanie the office manager and to Bob Martin about Rasmussen's offensive sexual touching and abusive behavior, Rasmussen confronted Mrs. Shadix-Marasco and pulled her into a small exam room. Rasmussen accused her of telling other employees that he had sex with a drug rep. At that point, since Bob Martin had done nothing about Mrs. Shadix-Marasco's complaint, she told him directly how offensive his behavior was and revealed personal details about her childhood that unwittingly made her more vulnerable to his predatory conduct. Rasmussen then increased the vigor of his predatory offensive behaviors, fully aware of the effect that his conduct was having on her because of her history. As a physician with specialized knowledge he capitalized on the opportunity to injure her emotionally and mentally.

Plaintiffs' Amended Complaint at ¶ 26 & 27.

## II.  Defendant Rasmussen's Rule 35(a) Motion for Mental Examination

In the instant Motion, Defendant Dr. Steven Rasmussen ("Rasmussen") moves for a Mental Examination of Plaintiff Kimberly Shadix Marasco ("Marasco") under Federal Rule of Civil Procedure 35. Rasmussen contends that Marasco's IIED, assault and battery and claims for mental anguish and emotional distress damages have placed her mental condition in controversy in this case. Specifically, Marasco alleges that she has been injured emotionally and mentally and that she continues to suffer from anxiety, panic attacks, nightmares, headaches and exacerbation of Post Traumatic Stress Disorder ("PTSD"), as a result of Rasmussen's alleged conduct. Rasmussen contends that the above-claims have placed her mental condition in controversy in this case and that in order to properly cross-examine Marasco and her expert witness, Linda Seale (who is expected to testify with regard to the source of Marasco's emotional distress), Rasmussen is entitled to a

2

mental examination of Marasco. Rasmussen requests that Dr. Michael Arambula, M.D., a forensic psychiatrist who specializes in diagnosing health conditions and determining their underlying causes, be selected to perform the mental examination of Marasco. The proposed examination

> is designed to evaluate the existence, nature and extent of [Marasco's] reported emotional distress, including any mental disorders such as GAD and PTSD; to determine whether Ms. Marasco may have been predisposed to having a mental condition; to establish whether she suffered from any such conditions before, during or after working with Dr. Rasmussen; and to identify the likely causes of her reported emotional conditions or disorders.

Supp. Declaration of Dr. Arambula at ¶ 7, Exhibit A to Rasmussen's Appendix to his Reply Brief.

Although Marasco does not dispute that her psychological state is at issue in the case, she argues that Rasmussen has failed to present good cause for the examination. In addition, she objects to the proposed manner and scope of the examination. Marasco emphasizes that the Defendants have already deposed her for nearly ten hours in this case and thus have had sufficient opportunity to examine her mental state.

    **A.    Does "good cause" exist for the Rule 35(a) Mental Examination?**

Rule 35(a)(1)of the Federal Rules of Civil Procedure provides that "[t]he court. . .may order a party whose mental or physical condition. . .is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a). In order to be entitled to a Rule 35 mental examination, the moving party must show (1) that the plaintiff's mental state is in controversy; and (2) good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964); *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 208 (5th Cir. 1990). While the Federal Rules of Civil Procedure are to be liberally construed, "they should not

be expanded by disregarding plainly expressed limitations." *Schlagenhauf*, 379 U.S. at 121. Thus, as the Supreme Court explained in *Schlagenhauf*:

> The 'good cause' and 'in controversy' requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident—or, as in this case, two accidents—and a general charge of negligence is lodged. Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases. The plain language of Rule 35 precludes such an untoward result.

379 U.S. at 121-22. Thus, even when the good cause and in controversy requirements of Rule 35 have been met, "it is still within the sound discretion of the trial court as to whether to order an examination." *Kador v. City of New Roads,* 2010 WL 2133889, at *2 (M.D. La. May 27, 2010).

Because Marasco has conceded that her mental state is in issue in this case,[1] the Court need only address whether there is good cause for the mental examination. "'Good cause'" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere." *Fischer v. Coastal Towing Inc.*, 168 F.R.D. 199, 200 (E.D. Tex. 1996) (citing *Schlagenhauf,* 379 U.S. at 118). Courts have found good cause to exist where the plaintiff plans to prove her claim at trial through the testimony of her own expert witness. *See e.g., Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 200 (N.D. Tex. 1995); *Duncan v. Upjohn Co.*, 155

---

[1]*See* Plaintiff's Response at p. 4 ("Plaintiff does not dispute that her psychological state is in controversy"). Even if Plaintiff had not conceded that her mental state was in controversy, the Court would nevertheless so find since Plaintiff's pleadings, including but not limited to her IIED claim, have placed her mental state in controversy. *See Schllagenhauf,* 379 U.S. at 119 ("A plaintiff in a negligence action who asserts a mental or physical injury places that mental or physical injury clearly in controversy..."); *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 209 (N.D. Tex. 1996) ("A plaintiff who alleges an action for intentional infliction of emotional distress asserts a mental or emotional injury, and thereby places her mental condition in controversy on the basis of the pleadings alone").

F.R.D. 23, 25 (D. Conn. 1994); *Tomlin v. Holecek*, 150 F.R.D. 628, 630 (D. Minn. 1993). In the instant case, Marasco has designated Linda Seale as a hybrid fact/expert witness in this case. She is expected to opine about her care and treatment of Marasco and "the mental state of Ms. Shadix-Marasco as well as her opinion about the cause of Ms. Shadix-Marasco's mental and emotional distress and physical manifestation of same." *See* Plaintiffs' Witness List at p. 3.

Because Marasco has retained her own expert who will testify as to her emotional distress, good cause exists for Defendant Rasmussen to obtain his own expert to conduct a mental exam of Marasco. "When a claimant has retained her own experts and intends to prove her claim at trial through their testimony, and when her mental injuries will be an important component of her damages, good cause exists to permit defendant to select its own expert in that field to examine her." *Lemon v. Klibert*, 1998 WL 788779, at * 1 (E.D. La. Sept. 11, 1998). Although there has been an extensive amount of discovery in this case, including a two- day deposition of Marasco, the Court finds that Rasmussen still has a genuine need to have his own expert examine Marasco and analyze her condition. *See Jackson v. Entergy Operations, Inc.*, 1998 WL 28272, at * 2 (E.D. La. Jan. 26, 1998) (holding that plaintiff's compliance with discovery in producing her medical records, expert reports and depositions of her treating physicians was not sufficient to supplant the defendant's need to have its own experts examine plaintiff and analyze her condition)*; Ferrell v. Shell Oil Co.*, 1995 WL 688795, at * 1 (E.D. La. Nov. 20, 1995) (the plaintiff may not avoid a Rule 35 examination simply on the grounds that other sources of information, including expert reports and depositions, are available to the defendants). As one district court reasoned:

> [O]ne purpose in granting a request for a psychiatric examination pursuant to Rule 35 is to "preserve[ ] the equal footing of the parties to evaluate the plaintiff's mental state. . . . " Thus, while plaintiff has produced voluminous medical records and

5

reports, which he claims are sufficient to evaluate his mental state at all relevant times, this production does not necessarily negate the defendant's interest in an independent examination of the plaintiff.

*Duncan*, 155 F.R.D. at 25 (internal citations omitted). *See also, Fischer*, 168 F.R.D. at 201("To avoid prejudice, Defendant must have its expert conduct an examination of Plaintiff to rebut the reports of Plaintiff's vocational-rehabilitation expert"). Having found that Rasmussen has met both the "in controversy" and "good cause" requirements of Rule 35(a), Defendant Rasmussen is entitled to a mental examination of Marasco.

      **B.**      **The Nature and Scope of the Examination**

Although the Court has found that Rasmussen has presented good cause for the mental examination of Marasco, the Court retains considerable discretion to establish "the manner, conditions and scope of the examination." *Simpson v. University of Colorado*, 220 F.R.D. 354, 363 (D. Colo. Feb. 10, 2004). Rule 35(2)(B) requires that a court order directing that a physical or mental examination occur "specify the time, place, manner, conditions and scope of the examination, as well as the person or persons who will perform it." FED. R. CIV. P. 35(a)(2)(B).

      1.      <u>Has Marasco raised a valid objection to Dr. Arambula?</u>

As noted above, Rasmussen has designated Dr. Michael Arambula, M.D., a forensic psychiatrist, to perform the mental examination of Marasco. Marasco objects to the selection of Dr. Arambula based on "the propriety of Dr. Arambula, a male, conducting the examination of Mrs. Marasco." Plaintiff's Response at p. 9. In addition to gender, Marasco also generally argues that Dr. Arambula does not possess the expertise to properly examine victims of sexual harassment such as

Marasco.² Marasco's general complaints regarding Dr. Arambula are insufficient to disqualify him from performing the Rule 35 mental examination of Marasco.

In general, courts will appoint the physician of the moving party's choice unless the opposing party raises a valid objection to the physician. 8B Charles Alan Wright, Arthur R. Miller and Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 2234.2 (3rd ed. 2010). As one court reasoned:

> The "valid objection" requirement provides defendants with the same opportunity as plaintiffs in choosing an expert witness. Defendants have absolutely no say in determining which physician a plaintiff chooses as a treating physician or an expert witness; likewise, a plaintiff should be limited in his ability to object to the selection of the defendant's expert witnesses.

*Powell v. United States*, 149 F.R.D. 122, 124 (E.D. Va. 1993). Courts have found valid objections to a proposed examiner where the examiner had a personal bias in the case as evidenced by a business or attorney-client relationship with the attorney representing the defendant. *See e.g.*, *Adkins v. Eitel*, 206 N.E.2d 573 (Ohio Ct. App. 1965) and *Main v. Tony L. Scheston-Luxor Cab Co.*, 89 N.W.2d 865 (Iowa 1958). In contrast, Courts have overruled objections to proposed examiners where there were not valid or serious objections, such as in cases where the plaintiff had argued that the examiner was biased because (1) the examiner was abusive and defense oriented, *Greenhorn v. Marriott Intern., Inc.*, 216 F.R.D. 649, 652-3 (D. Kan. 2003); (2) only the examiner had already received information from the defendant regarding the case, *Lahr,* 164 F.R.D. 196 at 202-3; (3) the examiner was regularly employed by insurance companies and defendants to perform medical

---

²At the hearing, Plaintiffs' counsel also noted that Dr. Arambula failed to disclose to the Court five cases in which he testified at in the last four years. Defendant has clarified, however, that Dr. Arambula did not identify those five cases because they involved testimony given more than four years ago. See Rasmussen's Supp. Brief. Thus, Plaintiffs' counsel's concerns are unfounded.

7

examinations, *Powell*, 149 F.R.D. at 124; and (4) the examiner may have received grants or was associated with an institution who may have received grants from a defendant manufacturer, *Duncan*, 155 F.R.D. at 26.

In the instant case, Marasco has failed to raise a valid objection to Dr. Arambula which would justify appointing a different examiner in this case. Dr. Arambula is a licensed clinical and forensic psychiatrist who has expertise in forensic psychiatry and in diagnosing, evaluating and treating post-traumatic stress and similar mental conditions. Dr. Arambula's curriculum vitae demonstrates that he has extensive experience in forensic psychiatry and has numerous qualifications to enable him to perform a mental examination. The majority of Marasco's concerns regarding Dr. Arambula relate to his *credibility* and can be adequately addressed through cross-examination and impeachment of Dr. Arambula during the trial in this case. *See Lahr*, 164 F.R.D. 196 at 203 (any concerns about bias of examiner could adequately be addressed through cross-examination); *Duncan*, 155 F.R.D. at 26 (same); *Powell*, 149 F.R.D. at 124 (same). With regard to Marasco's specific objection to Dr. Arambula based on his gender, the Court finds that she has failed to sufficiently argue that being examined by a male psychiatrist would damage her psychological state. *See Ferrell,* 1995 WL 688795, at *2 (finding that plaintiff failed to present any evidence beyond "her counsel's bald allegation, that her 'present fragile mental state' might be injured by a another independent evaluation by a competent physician or psychologist"); *Duncan*, 155 F.R.D. at 27 ("[T]he plaintiff has not come forward with any persuasive showing of why Dr. Jacobs should not be allowed to conduct the examination."); *Gale v. National Transp. Co.,* 7 F.R.D. 237, 238 (S.D.N.Y. 1946) (overruling objection to examiner because he was a male and plaintiff was female). In addition, any concerns regarding Dr. Arambula's alleged inexperience in dealing with victims of sexual

harassment can also be addressed during cross-examination. *See Lahr*, 164 F.R.D. 204, at 212. Based upon the foregoing, the Court finds that Marasco has failed to raise a valid objection to Dr. Arambula.

    2.    <u>Scope of the Exam</u>

Marasco also objects to the nature and length of the proposed examination and asks the Court to "carefully limit the Rule 35 examination to exclude any of the proposed formal testing and restrict the time limit and the nature of the questions asked of Mrs. Marasco." Plaintiff's Response at ¶ 15. As noted, the exam proposed by Defendants would consist of (1) a three-hour clinical interview of Marasco by Dr. Arambula, and (2) the administration of two psychological tests—the Minnesota Multiphasic Personality Inventory ("MMPI-2") and the Millon Clinical Multiaxial Inventory ("MCMI-III")—which would take an additional two to three hours to complete.

The Court finds that Rasmussen has demonstrated good cause for Dr. Arambula to perform the two proposed psychological tests in this case. The MMPI-2[3] and the MCMI-III are routine, objective psychological tests which are widely used by mental health experts to assess an individual's personalty traits and symptoms. *See United States v. Thomas*, 2006 WL 140558, at *13 (D. Md. Jan. 13, 2006) ("The MMPI-2, consisting of 567 items, is the most widely used and researched psychological test available"); *Entergy Operations*, 1998 WL 28272, at * 2-3 (finding that psychological testing is a routine component of a complete psychiatric examination). Other than her conclusory allegations, Marasco has failed to demonstrate that the proposed routine

---

[3]The MMPI is used as a diagnostic aid in medical and psychiatric screening, and serves as "an objective, reliable screening instrument for appraising a person's personality characteristics and symptomatic behavior." *United States v. Thomas*, 2006 WL 140558, at *13 (D. Md. Jan. 13, 2006) (quoting James Neal Butcher, The MMPI-2 in Psychological Treatment 23 (Oxford University Press, 1990)).

psychological tests would be overly intrusive or unreliable in this case. *See e.g.*, *Clark v. Cornell Companies Inc.*, 2006 WL 6549493, at *2 (S.D. Tex. March 20, 2006) (finding that proposed mental examination consisting of an interview and the administration of the MMPI was not over-intrusive or unwarranted); *Entergy Operations*, 1998 WL 28272, at * 2-3 (finding that plaintiff failed to demonstrate that psychological testing was intrusive and unnecessary where tests were routine part of a complete psychiatric examination). The Court finds that Rasmussen has presented good cause for the use of the proposed objective tests in this case. *See Dunlap v. Hood*, 2008 WL 4851316, at *1(N.D. Tex. Nov. 7, 2008) (parties agreed to have plaintiff undergo MMPI and MCMI as part of mental examination); *Gibson v. Walgreen Co.*, 2008 WL 746845, at *2 (M.D. Fla. March 18, 2008) (permitting mental examination which included MMPI-2 and MMPI-3); *Greenhorn*, 216 F.R.D. at (ordering mental exam of plaintiff which included interview, MMPI-2, MCMI-III and VIP tests); *Lahr*, 164 F.R.D. 196 at 201-02 (finding that nature of mental examination was appropriate which including a three hour interview of the plaintiff and the administration of standard psychological tests).

Marasco also objects to the length of the proposed clinical examination of Marasco and any inquiries into her personal sexual history. Specifically, Marasco requests that the Court enter a protective order preventing Dr. Arambula from "inquiring into their personal sexual histories, which are irrelevant to this case" and limit the inquiry into "the source of her childhood PTSD to reasonable questions asked in a non-repetitive fashion to protect her from additional and unnecessary trauma." Plaintiffs' Motion for Protective Order at p. 3.

According to Dr. Arambula, the clinical interview will explore "the examinee's developmental, interpersonal, social, academic, occupational, medical, surgical and mental health

histories, the physiological and psychological symptoms reported by the examinee and the specific life events that are potential causes of the examinee's reported symptoms." Dr. Arambula's Supp. Declaration at ¶ 8, Rasmussen's Appendix to his Reply Brief. Dr. Arambula objects to any pre-established limitations on the scope of the examination and argues that any limitations would undermine the entire examination. The Court is not moved by these objections.

One of the Court's roles in a Rule 35 motion is to ensure that a plaintiff is not subjected to intrusive questions regarding personal matters that are entirely unrelated to the issues and claims in this lawsuit. *See Entergy Operations*, 1998 WL 28272, at * 3 (limiting the scope of the plaintiff's psychiatric examination to issues related to her mental condition which were at issue in the lawsuit). As evidenced at the hearing, Defendants have already asked Marasco numerous questions regarding her past sexual abuse during her deposition. In fact, defense counsel spent an inordinate amount of time during Marasco's deposition questioning her about graphic details of her sexual abuse as a child. As stated on the record, the Court finds the manner in which counsel for Austin Regional Clinic examined Marasco on these issues at her deposition to be reprehensible. The callous, overly-aggressive manner in which he questioned Marasco on these issues was inappropriate and harassing. This history informs the Court's approach to the examination, and the limitations that are appropriate. Had the discovery on this issue progressed in a non-harassing, professional manner, the outcome of this motion may have been different. Given Mr. Ross's actions in the deposition, however, the Court finds it necessary to assure that the harassment does not extend into the mental examination.

In light of the foregoing, the Court will limit the scope of Dr. Arambula's interview of Marasco regarding her sexual history. Specifically, while Dr. Arambula may interview Marasco

11

regarding past sexual abuse or abusive relationships (sexual or nonsexual), Dr. Arambula will not be permitted to question Marasco with regard to Marasco's sexual history in general (*e.g*, "how many partners have you had?"). The Court will further limit Dr. Arambula's interview of Marasco to one hour. Failure to comply with these conditions shall be punishable as contempt of court.

### III.   Defendants' Motions to Exclude Testimony of Plaintiff's Expert

The Court notes that on April 15, 2011, both Defendants filed motions challenging Plaintiff's mental health expert, and seeking to disallow that testimony. *See* Clerk's Doc. Nos. 103 and 104. These motions remain pending before the district judge. Given that the primary "good cause" permitting the independent examination authorized herein is to "level the playing field" and allow Defendants to have their own mental health expert opine regarding Marasco's mental anguish claim, in the event Judge Yeakel were to grant these motions there would no longer be good cause for an independent examination by Dr. Arambula. Accordingly, the Court will not order the exam authorized herein to take place until *after* the motions to strike Seale's testimony are resolved.

### IV.   Conclusion

Based upon the foregoing, the Court GRANTS Defendant Rasmussen's Motion for Mental Examination (Clerk's Docket No. 64) and Plaintiffs' Motion for Protective Order (Clerk's Docket No. 66) in accordance with the details in this Order.

Pursuant to FED. R. CIV. P. 35(2)(B), the Court ORDERS Kimberly Shadix Marasco to submit to a mental examination to be conducted by Dr. Michael Arambula, M.D., on a mutually agreeable date within 30 days after Judge Yeakel rules on Clerk's Doc. Nos. 103 and 104, at the office of Dr. Arambula in San Antonio, Texas. As detailed above, Dr. Arambula (or his staff) may administer MMPI-II and MCMI-III psychological tests of Marasco, and Dr. Arambula may conduct

a one hour clinical examination of Marasco with the express limitations noted above. No further examination shall be permitted.

Finally, the Court ORDERS that any materials or information disclosed to Dr. Arambula in preparation for or during the Rule 35 mental examination, as well as any reports prepared by Dr. Arambula, may only be provided or disclosed to counsel for the Parties in this case, and may not be disclosed by anyone to any third parties absent express order of the Court.

SIGNED this 20th day of May, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE